SHANGHAI AUTOMATION INSTRU-
MENT CO. LTD. and Shanghai Micro-
link Electronic Co., Ltd., Plaintiffs,

v.

Dennis KUEI, Matthew Tsai, and
Microlink Data System, Inc.,
et al., Defendants.

No. C–00–4822 PJH(EMC).

United States District Court,
N.D. California.

Nov. 19, 2001.

Juan C. Basombrio, Dorsey & Whitney, Costa Mesa, CA, for plaintiffs.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HAMILTON, District Judge.

The court has reviewed Magistrate Judge Chen's November 2, 2001, Report and Recommendation Re: Plaintiff's Motion for Entry of default Judgment. No objections have been filed. The court finds the Report correct, well-reasoned and thorough, and adopts it in every respect. Accordingly, plaintiff's motion (Docket No. 47) is GRANTED. A separate judgment will be entered against defendants Dennis Kuei, Micro Link Systems, Inc., Microlink Data Systems, Inc., Cipher Instrument, Inc., and MIG, Inc. The remaining defendant, Matthew Tsai has filed a petition in bankruptcy and this matter is stayed as to him.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT (No. 47)

CHEN, United States Magistrate Judge.

Before the Court is the motion by plaintiffs Shanghai Automation Instrument Co., Ltd. and Shanghai Microlink Electronic Co., Ltd. for entry of default judgment against Dennis Kuei, Microlink Data System, Inc., Micro Link Systems, Inc., Cipher Instrument, Inc., and Microlink International Group, Inc. For the below reasons, the Court recommends that this motion be granted and default judgment entered.

### BACKGROUND

In May 1993, Shanghai Automation Instrument Co., Ltd. (hereinafter referred to "Shanghai Automation"), a company based in the People's Republic of China, orally agreed with Dennis Kuei, and Matthew Tsai, citizens and residents of the state of California, to enter into a joint venture (hereinafter referred to as the "Joint Venture"). (First Am. Compl. ¶ 15.) Shanghai Automation, Kuei and Tsai sought to assemble laptop computers in China for, *inter alia*, export to California. *Id.* Shanghai Automation contributed 75 percent of the initial costs of the Joint Venture and Kuei and Tsai contributed 25 percent. (First Am. Compl. ¶ 16.) Accordingly, Shanghai Automation was entitled to 75 percent of the profits of the Joint Venture, and Kuei and Tsai, the remaining 25 percent. *Id.*

On May 20, 1993, the parties reduced the oral agreement to enter the Joint Venture to a writing (hereinafter referred to

as the "JV Agreement."). (First Am. Compl. ¶ 18.) At the signing of the JV Agreement, Kuei and Tsai represented that they owned and/or controlled a company, Micro Link Systems, Inc. (hereinafter "Micro Link Systems"), and designated this company a party to the JV Agreement as well. *Id.*

Thereafter, the parties formed and registered in China, Shanghai Microlink Electronic Company, Ltd. (hereinafter referred to as "SMEC") to facilitate the goals of the Joint Venture. (First Am. Compl. ¶ 20.) Kuei was made Vice–Chairman of the Board of Directors of SMEC and Tsai, a director. (First Am. Compl. ¶ 24.)

With control of the daily operations of SMEC, Kuei and Tsai purchased laptop computer components exclusively from a Taiwanese corporation, Cypher Corporation (hereinafter referred to as "Cypher (Taiwan)"), manufactured the laptops in China and sold the laptops to Cipher Instrument, Inc. (hereinafter referred to as "Cipher (CA)"), a California corporation. (First Am. Compl. ¶¶ 25–26.) Unbeknownst to Shanghai Automation, these transactions were not arm's-length deals as Kuei and Tsai owned and controlled both Cypher (Taiwan) and Cipher (CA). *Id.* To further complicate matters, Kuei and Tsai directed SMEC to make payments to Microlink Data Systems, Inc. (hereinafter "Microlink Data"), a California corporation owned by Kuei and Tsai, for the laptop computer components purchased from Cypher (Taiwan). (First Am. Compl. ¶¶ 8, 13 and 25.) For the laptops sold to Cipher (CA), the Joint Venture received partial payment from Cipher (CA) and Microlink Data and from Tsai personally. (First Am. Compl. ¶ 26.)

In 1998, Kuei and Tsai entered into eight separate sales agreements for the Joint Venture's sale of 8,000 laptop computers to Cipher (CA). (First Am. Compl. ¶ 31.) At Kuei and Tsai's direction, the Joint Venture shipped 7,000 of the 8,000 laptops to Cipher (CA) and the remaining 1,000 to Solar Technology Limited, a Hong Kong corporation not alleged to be owned and controlled by defendants Kuei and Tsai. *Id.* Neither Cipher nor any other entity or individual made payment for the 7,000 laptops. *Id.*

On February 8, 1998, Kuei was arrested in China for alleged fraud in connection with a business venture and requested that Shanghai Automation make loans to Kuei in the total amount of $2,187,000.00. (First Am. Compl. ¶ 32.) Kuei represented to Shanghai Automation that, as long as he was in custody, he was not in a position to facilitate the repayment of the monies owed to the Joint Venture by "Microlink"[1] and Cipher (CA). *Id.* Shanghai Automation made personal loans to Kuei on July 12, August 6 and 9, October 8, 1999 and January 31, 2000, which he did not repay. *Id.*

Shanghai Automation also made loans, in the total amount of $1,190,000.00, to Kuei and Tsai based on their representations that they needed operating expenses for their "Microlink" companies. (First Am. Compl. ¶ 33.) Shanghai Automation made loans to Kuei and Tsai on October 16 and 17, 1996, July 16, 1997, February 24 and May 13, 1998, which were also not repaid. *Id.*

During the course of the Joint Venture, Kuei, Tsai and Shanghai Automation, as joint venturers, borrowed monies from the Commercial and Industrial Bank of China that were to be used for operating expenses for the Joint Venture. (First Am. Compl. ¶ 37.) These loans, in the amount

---

1. As discussed *infra,* defendants Kuei and Tsai use Microlink Data, Micro Link Systems and Microlink International, Inc. interchangeably.

of $3,830,000.00, were guaranteed by Shanghai Automation. *Id.* The Joint Venture defaulted on these loans and Shanghai Automation currently faces liability as to these loans. *Id.*

On February 8, 2001, Shanghai Automation, on behalf of itself and SMEC, filed the Complaint herein against defendants Kuei, Tsai, Microlink Data, Micro Link Systems, Cipher (CA) and Microlink International Group, Inc., a California corporation purportedly owned and controlled by Kuei and Tsai (hereinafter referred to as "MIG, Inc."), alleging: conversion, fraud, intentional misrepresentation, fraudulent concealment, breach of fiduciary duty, breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing and tortuous interference with contract. The Complaint was served on all defendants including all corporate entities who were served through the California Secretary of State as per Judge Hamilton's order.

On May 3, 2001, defendant Tsai, individually, filed an answer to the Complaint. The remaining defendants, however, failed to answer and on May 14, 2001, defaults were entered. Default was not entered against Tsai.

On June 1, 2001, in anticipation of this motion for entry of default judgment, eventually filed on July 6, 2001, Judge Hamilton referred this matter to the Court for a report and recommendation.

### REPORT

Federal Rule of Civil Procedure 55(b)(2) permits the Court, following a defendant's default, to enter a final judgment in a case. There is no matter of right to the entry of a default judgment, and its entry is entirely within this Court's discretion. *See Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir.1986); *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980); *Kloepping v. Fireman's Fund,* No. C94–2684 TEH,

1996 WL 75314, *2 (N.D.Cal. Feb.13, 1996). This Court may find entry of a default judgment appropriate in consideration of, *inter alia:* [1] the sufficiency of the complaint and the merits of a plaintiff's substantive claims; [2] the possibility of prejudice if entry is denied; [3] the sum of money at stake; [4] the possibility of a dispute concerning material facts; [5] whether default was due to excusable neglect; and [6] the strong policy favoring decisions on the merits. *See PepsiCo, Inc. v. Triunfo–Mex, Inc.,* 189 F.R.D. 431, 432 (C.D.Cal.1999) ("applying this discretionary standard, default judgments are more often granted than denied"), *citing, Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Board of Trustees of the Sheet Metal Workers v. Sawyer,* No. C99–3225 VRW, 2000 WL 1006522, *1 (N.D.Cal. July 13, 2000).

The Court considered the pleadings and other papers filed with this motion for entry of default judgment as well as considered the arguments of counsel for the plaintiffs at hearings on the motion conducted on September 5 and 25, 2001.

Defendants Kuei, Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc. were served with both the Complaint and the current motion, yet failed to respond or enter any appearance in this case. (Basombrio Decl. ¶¶ 6–10, Ex. 5–9.)

The Complaint alleges, *inter alia,* that defendants Kuei, Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc.: [1] wrongfully converted property; [2] intentionally misrepresented and intended to defraud Plaintiffs; [3] fraudulently concealed information from Plaintiffs; [4] breached fiduciary duties; [5] breached contracts; [6] unjustly enriched themselves; [7] breached the implied covenant of good faith and fair dealing; and [8] tortuously interfered with contracts. Some of the claims are brought on behalf

of Shanghai Automation, while others are advanced on behalf of SMEC. Shanghai Automation seeks general and compensatory damages, in the amount of $25,507,000.00, general and compensatory damages on behalf of SMEC, in the amount of $6,100,000.00, and punitive damages, in the amount of $15,000,000.00.[2]

■ Where, as here, a default has been entered, the factual allegations of the Complaint together with other competent evidence submitted must be taken as true. *See TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir.1987); *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978). However, where less than all defendants have defaulted, the allegations are only true as to those defaulting defendants.

■ In a diversity case, absent a choice-of-law contractual provision and under California choice of law rules, the Court presumes California law to apply unless there exists a compelling reason to displace state law with the law of a foreign jurisdiction. *See Browne v. McDonnell Douglas Corp.,* 504 F.Supp. 514, 517 (N.D.Cal.1980) (stating that a district court in California will apply California law, "unless it is shown that there is a compelling reason to displace forum law"); *Hurtado v. Superior Court,* 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 522 P.2d 666 (1974) (noting that generally a California court will apply California law unless a party invokes the law of a foreign jurisdiction). Given that the defendants are California citizens and corporations and the transactions were presumably centered in California, there is good reason to apply California law. *See Globespan, Inc. v. O'Neill,* 151 F.Supp.2d 1229, 1231–32 (C.D.Cal.2001) (applying the "governmental interests" analysis for choosing

the law to be applied). No party sought a different choice of law.

**1. The Proper Plaintiff**

Shanghai Automation contends that by their acts, specifically their conversion of the assets of the Joint Venture for their own benefit, defendants Kuei and Tsai repudiated the Joint Venture and in effect withdrew the 25 percent of Joint Venture capital that had been defendants Kuei and Tsai's original contribution to the Joint Venture. Shanghai Automation further contends that the actions of defendants Kuei and Tsai left Shanghai Automation, through subrogation, as the 100 percent beneficial owner of the Joint Venture's main, if not sole, asset—the corporate entity, SMEC.

■ Where a joint venturer wrongfully repudiates a joint venture agreement and converts the assets of the joint venture to his own use and benefit, the victim possesses the following remedies; he or she may: [1] waive any tort and sue to specifically enforce the joint venture agreement; [2] submit to defendant's repudiation and sue for conversion; [3] submit to the repudiation and sue for breach of the joint venture agreement (i.e. lost profits); and [4] sue in tort. *Gherman v. Colburn,* 72 Cal.App.3d 544, 564–65, 140 Cal.Rptr. 330 (1977); *see Boyd v. Bevilacqua,* 247 Cal. App.2d 272, 55 Cal.Rptr. 610, (1966) ("[while it is the general rule that] a joint venturer may not sue his co-adventurer in an action at law in respect to the joint venture until an accounting has been had, such rule does not apply where the wrongful act or acts complained of are not only a breach of contract but constitute a tort and particularly where the tort is of such a nature that it terminates the joint venture, wrongfully destroys it and results in the

---

**2.** As indicated by Amended Proposed Judgment by Default submitted by Shanghai Auto-mation on September 18, 2001.

conversion by the co-adventurer of the entire assets to his own use.")

■ While Shanghai Automation may advance these remedies, it fails to provide any authority for the proposition that it may also maintain claims on behalf of the Joint Venture or SMEC, through subrogation. It also fails to provide any authority to find that the actions taken by any defendant "in effect withdrew the 25 percent of the capital of the Joint Venture that they had originally contributed," (First Am. Compl. ¶ 29), effectively resulting in a complete forfeiture by Kuei and Tsai of their equity in the Joint Venture. Absent authority to the contrary, it appears that neither the Joint Venture nor SMEC has standing to sue in this case. Only Shanghai Automation (hereinafter referred to as "Plaintiff"), the victimized Joint Venture partner, is entitled to pursue any or all of the aforementioned claims set forth by *Gherman v. Colburn, supra.* It may sue to recover its 75 percent entitlement for the acts committed against the Joint Venture.

## 2. The Proper Defendants

Plaintiff Shanghai Automation alleges that co-defendants Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc. were the alter egos of defendants Kuei and Tsai, and thus Kuei may be sued directly for liabilities incurred by these defendant corporations.

■ A corporation's veil may be pierced and the corporation may be deemed an alter ego of an individual where: [i] an unity of interest and ownership exists between the personality of the corporation and the individual owner; and [ii] failure to disregard their separate identities would result in an inequitable result. *See AT&T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir.1996) (applying California law); *Sonora Diamond Corp. v. The Superior Court of Tuolumne County,* 83 Cal.App.4th 523, 538, 99 Cal. Rptr.2d 824 (2000).

■ In determining whether there exists an unity of interest and ownership between corporation and individual, the Court must look to a totality of circumstances, where no one factor is conclusive in consideration of factors such as: failing to adequately capitalize a corporation; commingling funds and other assets; treating the assets of the corporation as one's own; diverting corporate assets to non-corporate uses without authority to do so; holding out as personally liable for corporate debts; having sole ownership of all the stock in a corporation by an individual or members of a family; contracting with another with intent to avoid performance by using a corporation as a shield against personal liability; using the corporation as a mere shell for a single venture or business of an individual or another corporation; concealing personal business activities; failing to maintain adequate corporate records; disregarding legal formalities; the use of the same office or business location; and the use of the corporate entity to procure labor, services or merchandise for another person or entity. *See Sonora Diamond,* 83 Cal.App.4th at 538–39, 99 Cal.Rptr.2d 824; *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal. App.2d 825, 838–40, 26 Cal.Rptr. 806 (1962) (finding that the trial court's determination to pierce the corporate veil was supported by substantial evidence); *see also Mid–Century Ins. Co. v. Gardner,* 9 Cal.App.4th 1205, 1212–13, 11 Cal.Rptr.2d 918 (1992) (noting that the issue is a question of fact and that "it is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity"); *Roman Catholic Archbishop v. Superior Court,* 15 Cal.App.3d 405, 406, 411, 93 Cal.Rptr. 338 (1971).

■ Applying these factors to the evidence in the record, the Court concludes

that defendants Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc. and defendants Kuei and Tsai possess a unity of interest and ownership.[3]

First, according to the allegations of the Complaint, defendants Kuei and Tsai refer to and use Micro Link Systems, Microlink Data and MIG, Inc. interchangeably. (First Am. Compl. ¶ 23.) For example, although they very clearly intended for Micro Link Systems to be party to the Joint Venture, (First Am. Compl. ¶¶ 18–22.), defendants Kuei and Tsai filed documentation in support of the application of the formation of SMEC with the Shanghai Commission on Foreign Trade and Economic Cooperation that listed Microlink Data instead. (First Am. Compl. ¶¶ 20, 27.) Additionally, while the three companies are slightly different in name, the fact remains that Micro Link Systems, Microlink Data and MIG, Inc. share two business addresses: 46600 Landing Parkway in Fremont, California and 1900 Wyatt Drive #4–5 in Santa Clara, California. (Basombrio Decl. ¶¶ 2–4, Ex. 1–3.)

Second, Cipher (CA) also shares 46600 Landing Parkway in Fremont, California, as its business address. (Basombrio Decl. ¶ 5, Ex. 4.)

Third, defendant Kuei is the chief executive officer of Microlink Data and the chief executive officer, secretary, chief financial officer, director and registered agent of Cipher (CA). (Basombrio Decl. ¶¶ 2, 5, Ex. 1 and 4.) Defendant Tsai is the president of Micro Link Systems, a director and registered agent of Microlink Data, the president of MIG, Inc. and a director of Cipher (CA). (Basombrio Decl. ¶¶ 2–5, Ex. 1–4.) More importantly, according to the Complaint, defendant Kuei's and Tsai's conduct clearly indicates that between the two of them they had control of these corporations by, *inter alia*, signing legal documents on behalf of MIG, Inc., Microlink Data and Micro Link Systems and Cipher (CA). (First Am. Compl. ¶¶ 34, 35, 38.)

Fourth, the Complaint alleges that defendants Kuei and Tsai commingled the funds of Cipher (CA) and Microlink Data by transferring funds from Microlink Data to the Joint Venture for laptop computers received by Cipher (CA). (First Am. Compl. ¶¶ 25–26.) Additionally, payments due from the Joint Venture to Cypher (Taiwan) for computer components were made to Microlink Data instead. *Id.*

The Complaint alleges that defendants Kuei and Tsai held themselves out to be personally liable for the debts of Cipher (CA) by making a personal payment for Cipher (CA)'s debt to the Joint Venture for the laptop computers. (First Am. Compl. ¶ 26.) Also, in 1998, defendants Kuei and Tsai personally borrowed money from Plaintiff by representing that the money was necessary on behalf of their struggling "Microlink" entities. (First Am. Compl. ¶ 33.)

Finally, the record indicates that these corporate entities have all been suspended by the Franchise Tax Board.[4]

---

**3.** To the extent the Complaint alleges the acts of defendant Kuei and Tsai as interwoven, the Court assumes the truth of factual allegations regarding alter ego liability that implicate both defendants Kuei and Tsai. *See, e.g., United States v. Local 1804–1, Intern. Longshoremen Ass'n,* 812 F.Supp. 1303, 1311 (S.D.N.Y. 1993). Any reference to facts implicating defendant Tsai will not have a preclusive effect should his case proceed to trial. *See In re Daley,* 776 F.2d 834, 838 n. 7 (9th Cir.1985)

(noting that because default judgments are not actually litigated, they do not receive preclusive effect in later proceedings), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

**4.** Microlink Data was suspended in November 1993. (Basombrio Decl. ¶ 2, Ex. 1.) Micro Link Systems was suspended in August 1995. (Basombrio Decl. ¶ 3, Ex. 2.) MIG, Inc. was suspended in August 1995. (Basombrio Decl.

While the Court does not have before it information about corporate documents, financial records or other indicia of alter ego liability, in light of the foregoing, it is clear that assets were commingled, business addresses were interchangeable, defendants Kuei and Tsai are alleged to have controlled the operations and held themselves out to be personally liable for the debt of Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc. The allegations provide a firm basis to find that defendants Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc., suspended entities, were mere shells for defendants Kuei and Tsai in an attempt to avoid personal liability. An unity of interest and ownership exists between defendant Kuei and the corporate defendants to establish the first prong of the alter ego doctrine.

An inequitable result exists where an unsatisfied creditor exists in connection with an abuse of the corporate form. *See United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) (noting that an inequitable result is found where some conduct amounting to bad faith makes it inequitable for the equitable owner of a corporation to hide behind a corporate veil). Were Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc. not considered as the alter egos of defendant Kuei, an inequitable result would occur as defendant Kuei would be allowed to shield himself from liability from the conversion and transfer of funds into these currently-suspended corporate entities, which are apparently without assets, in contradiction of the Joint Venture. *See Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir.1984).

Here, given the allegations against defendant Kuei which are taken as true, the Court disregards the corporate entities of Microlink Data, Micro Link Systems, Cipher (CA) and MIG, Inc. and considers the corporate defendants the alter ego of defendant Kuei. *See Say & Say, Inc. v. Ebershoff*, 20 Cal.App.4th 1759, 1769, 25 Cal. Rptr.2d 703 (1993) ("a court may disregard the corporate entity and treat the acts as if they were done by the individuals themselves of by the controlling corporation where the corporate form is used to accomplish a wrongful purpose").

### 3. The Sufficiency and Merits of Plaintiff Shanghai Automation's Claims

As to the substantive claims, the Complaint is supported by detailed allegations as well as affidavits and documentary evidence submitted in support of this motion.

 Plaintiff Shanghai Automation establishes claims for conversion under California law by alleging: [1] ownership or right to possession of property; [2] wrongful disposition of that property right; and [3] monetary damages. *See Kingvision Pay–Per–View, Ltd. v. Chavez*, No. C00–2270 CRB, 2000 WL 1847644, *4 (N.D.Cal. Dec.11, 2000), *citing, G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir.1992). Plaintiff Shanghai Automation establishes its claim for conversion. According to the Complaint, defendant Kuei caused 7,000 laptop computers, which were the property of the Joint Venture, to be transferred, without payment, to Cipher (CA), an alter ego of defendant Kuei. (First Am. Compl. ¶ 31.) Defendant Kuei's conversion of the Joint Venture's property resulted in damages to Shanghai Automation in the amount equal to its 75 percent stake in the Joint Venture's property—7,000 laptop computers which were never paid for. *Id.* According to the Complaint and documents submitted by Plaintiff, 75 percent of the 7,000 laptops is valued at $16,012,500.00. *Id.*

¶ 4, Ex. 3.) Cipher (CA) was suspended in April 2000. (Basombrio Decl. ¶ 5, Ex. 4.)

■ Second, plaintiff Shanghai Automation alleges that the Joint Venture borrowed monies, through a loan guaranteed by Plaintiff, from the Commercial and Industrial Bank of China, in the amount of $3,830,000.00, to be used for operating expenses. (First Am. Compl. ¶ 37.) While Plaintiff admits that some of funds were legitimately spent on operating expenses of the Joint Venture, it alleges that defendant Kuei converted the majority of funds for personal use and never used the funds for the operating expenses of the Joint Venture. *Id.* What is unknown, however, is what portion of those funds were converted for personal use. Although the burden of proving each element generally lies with the party asserting the claim, the burden of proving a fact may be shifted to the party who has the sole access to evidence which would prove the claim false. *See G.E.J. Corporation v. Uranium Aire, Inc.*, 311 F.2d 749, 751 (9th Cir.1962), *citing,* 9 WIGMORE, EVIDENCE § 749, at 467 (rev. ed.1960); *see, e.g., Selma, R. & D.R. Co. v. United States,* 139 U.S. 560, 567–68, 11 S.Ct. 638, 35 L.Ed. 266 (1891); *Healey v. Coury,* 162 Ariz. 349, 783 P.2d 795, 800–01 (1989) ("generally, a party must establish a fact which is essential to his claim ... however, the burden of proof as to a matter which is peculiarly within the knowledge or control of the opposite party is placed on that party"); *cf. In re Malget,* 165 B.R. 933, 936 (Bkrtcy.S.D.Cal.1994) (burden does not shift where evidence is merely difficult to obtain). Plaintiff does not have access to the financial records of the Joint Venture which were kept by defendants Kuei and Tsai. These records appear unavailable. Here, because defendants Kuei and Tsai allegedly controlled these funds and presumably have sole possession of this information, the burden should shift to defendant Kuei to show which amount of the loan was not converted to his personal use. Because defendant Kuei defaulted and fails to respond, Plaintiff is entitled to recover its 75 percent share in the entire amount of the loan— $2,872,500.00.

■ Under California law, a breach of contract claim may be established where a party demonstrates: [1] the existence of a contract; [2] performance by the plaintiff; [3] breach by the defendant; and [4] damages. *See First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 108 Cal.Rptr.2d 23, 33 (2001), *citing,* 4 WITKIN, CAL. PROCEDURE (PLEADING) §§ 476, (4th ed.1997). Here, plaintiff Shanghai Automation clearly established valid claims for recovery as to its breach of contract claims by alleging that Shanghai Automation entered into contracts for the loan of monies to defendant Kuei. Shanghai Automation made personal loans to Kuei on July 12, August 6 and 9, October 8, 1999 and January 31, 2000, in the total amount of $2,187,000.00. (First Am. Compl. ¶ 32.) Shanghai Automation also lent to defendants Kuei and Tsai, jointly, on October 16 and 17, 1996, July 16, 1997, February 24 and May 13, 1998, additional monies, totaling $1,190,000.00. (First Am. Compl. ¶ 33.) The amounts due on these various personal loans are still outstanding. (First Am. Compl. ¶¶ 32–33.) Defendant Kuei is liable to Shanghai Automation for a total amount of $3,377,000.00.

4. **The Factors Weigh in Favor of Entry of Default Judgment**

■ In consideration of the other factors listed above, all relevant factors weigh in favor of entry of default judgment against defendant Kuei and his alter egos. Shanghai Automation seeks to recover an amount well in excess of $22,000,000.00, a substantial amount. Plaintiff is likely to suffer significant prejudice were recovery delayed as the operations of Micro Link Systems, Microlink Data, Cipher (CA) and MIG, Inc. have all been suspended and

defendant Kuei may have disappeared from the local area. Given defendant Kuei's international connections, there is a substantial likelihood that his assets may be disbursed or transferred out of this country.

The Court has not been presented with anything that suggests there is a serious dispute concerning the material facts. Defendant Tsai, filed an conclusory answer asserting several affirmative defenses without tendering any specific facts or allegations which contradict the allegations of the Complaint. As previously mentioned, the documentary evidence submitted by Plaintiff substantiates its claims. Most importantly, it appears that defendant Tsai, the sole non-defaulting defendant, is not likely to defend this suit. Other than filing an answer and appearing at one case management conference, defendant Tsai has not appeared at other conferences, has completely failed to respond to discovery requests, and has not appeared or filed any opposition to the motion for default judgment. Furthermore, defendant Tsai filed a petition in the Bankruptcy Court and the case against him in this matter has been stayed. (Notice of Automatic Stay by Matthew Tsai, filed October 17, 2001.) While there remains a theoretical possibility that the Bankruptcy Trustee could assume the defense of this action, there is a substantial likelihood that this suit will not be defended.

The default of defendant Kuei and his defendant alter egos cannot be attributed to excusable neglect. All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.

While there is a strong policy favoring decisions of the merits, every other factor under *Eitel v. McCool, supra*, weighs in Shanghai Automation's favor in this case.

### 5. The Entry of Default Judgment Against Less Than All Defendants— *Frow v. De La Vega*

 However, because one defendant, Tsai, answered the Complaint and is not in default (at least at this juncture), the question arises as to whether the Court has the discretion under Federal Rule of Civil Procedure 54(b) (judgments) to enter a default judgment against less than all the defendants. Rule 54(b) provides in pertinent part:

> . . . when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

*See Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (noting that the court has discretion to enter a default judgment as to less than all defendants).

As indicated above, the factors that militate in favor of entering a default judgment here would also tend to indicate "there is no just reason for delay." However, in *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872), the Supreme Court held that under certain circumstances, the court should not enter a default judgment against one or more defendants which is, or likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendants.

In *Frow*, the appellant was one of fourteen defendants charged with the conspiracy to defraud in a land transaction. The appellant defaulted while the remaining thirteen defendants answered on the merits. The trial court entered a "decree *pro confesso* " followed by a "final decree absolute" against the appellant (latter day default and default judgment). The Su-

preme Court reversed, finding that the trial court could not enter a final decree on the merits against one defendant before the cause was fully adjudicated as to the others. *See Frow,* 82 U.S. (15 Wall.) at 554–55. The Court stated that:

"where a bill makes a joint charge against several defendants, and one of them makes default, [the trial court should] simply [ ] enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence; he cannot be heard at the final hearing."

*Id.* at 554. The *Frow* Court further stated that if a final judgment were to be entered, "there might be one decree of the court sustaining the charge of joint fraud committed by the defendants, and another decree disaffirming the said charge, declaring it to be entirely unfounded and dismissing the complainant's bill." *Id.*

*Frow* stands for the proposition that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2690 (2001).

While "*Frow* undoubtedly stands for the proposition that in certain circumstances it is inappropriate to enter a default judgment against one defendant when other defendants in the same case have prevailed," subsequent courts have pointed out that the precise holding of what those circumstances is unclear. *See Farzetta v. Turner & Newall, Ltd.,* 797 F.2d 151, 154 (3rd Cir.1986).[5]

As a result, the scope of *Frow*'s injunction against entering default judgments while claims are pending against other defendants has been stated variously. Some courts have focused on whether the complaint seeks to hold defendants *jointly* liable—such as where a tortuous act is committed by several persons acting in concert wherein each tortfeasor is entirely responsible for the resulting damage—in contrast to cases in which there is "several" or "joint *and* several" liability wherein a finding of liability as to one defendant is consistent with a finding of no liability as to others. *See In re Uranium Antitrust Litigation,* 617 F.2d 1248, 1257 (7th Cir.1980) (*Frow* not applicable where different results as to different parties not logically inconsistent); *Whelan v. Abell,* 953 F.2d 663, 674 (D.C.Cir.1992) (default order improper where liability "is truly joint—that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable"); *Carter v. District of Columbia,* 795 F.2d 116, 137 (D.C.Cir. 1986); *International Controls Corp. v. Vesco,* 535 F.2d 742, 746 (2nd Cir.1976); *Martin v. Coughlin,* 895 F.Supp. 39, 43 (N.D.N.Y.1995); *State of Florida ex rel. Dept. of Ins. of State of Florida v. Countrywide Truck Ins. Agency, Inc.,* 258 Neb. 113, 602 N.W.2d 432, 438 (1999).

Other courts, including the Ninth Circuit, have held that *Frow* is not limited to claims asserting joint liability, but extend to certain circumstances in which the defendants have closely related defenses or are otherwise similarly situated. *See In re*

---

**5.** The Third Circuit in *Farzetta, supra,* noted that the *Frow* Court did not identify what the Court intended to be "certain circumstances," largely in part due to the Court's ambiguity and failure to identify the relationship between the co-defendants. *See Farzetta,* 797 F.2d at 154 n. 2.

*First T.D. & Investment, Inc.,* 253 F.3d 520, 532 (9th Cir.2001); *Gulf Coast Fans v. Midwest Electronics Importers,* 740 F.2d 1499, 1512 (11th Cir.1984) (distributor's breach of contract claim against importer and exporter of fans could not logically result in one defendant being liable but not the other); *Phoenix Renovation Corp. v. Gulf Coast Software, Inc.,* 197 F.R.D. 580, 582–83 (E.D.Va.2000) (software manufacturer and software distributor were similarly situated with respect to claims of breach of contract and fraud brought by purchaser); *Western Security Bank v. Powerhorse Lockwood Irrigation Corp.,* No. CV1:00–2032, 2001 WL 180067, *2 (N.D.Ohio Feb.21, 2001) (liability of defendant and guarantor closely interrelated).

In *First T.D., supra,* two mortgage investment companies, involved in schemes to defraud, went into bankruptcy proceedings. The companies' bankruptcy trustee filed an action against 132 investors, apparent creditors in the bankruptcy proceedings, alleging that the investors had imperfect (unsecured) interests, because they did not have physical possession of the notes and deeds originally assigned by the companies. 88 of 132 individuals failed to answer and default was entered against those individuals.[6] 18 of the 44 individuals who answered, moved for, and were granted, summary judgment as the trial court determined that the California Business and Professions Code protected perfection of the individuals' interests without physical possession of notes or deeds. In essence, the trial court determined that all defendants' interests were perfected by statute. Thereafter, however, the trial court granted the trustee's motion for entry of default judgment against the 88 non-answering defendants.

On appeal, the Ninth Circuit recognized the general rule created by *Frow* extended to similarly-situated defendants, even if not jointly and severally liable, where necessary to avoid an inherent inconsistent result. *See First T.D.,* 253 F.3d at 532. The court concluded that, because each individual defendant's transaction followed an identical pattern with almost identical legal documents, it was incongruous and unfair to allow recovery against defaulting defendants on a legal theory that had already been rejected by the court as to answering defendants in the same action. *See id.,* at 531–32. Therefore, the court held that under *Frow,* the lower court abused its discretion by in entering default judgments which created inconsistent judgments against the multiple defendants. *See id.*

The two most authoritative treatises on the Federal Rules of Civil Procedure, Moore's Federal Practice and Procedure and Federal Practice and Procedure by Wright, Miller & Kane, are sometimes cited as presenting these ostensibly two divergent views—Moore's representing the joint liability position and Wright, Miller and Kane's, the allegedly more expansive view of *Frow.* For instance, the Virginia District Court in *Phoenix Renovation, supra,* quotes Moore's in support of the statement that "[m]ost jurisdictions have narrowly construed *Frow* to bar entry of default judgment against one of several defendants only if 'the theory or recovery is one of true join liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant.'" *Phoenix Renovation,* 197 F.R.D.

---

**6.** The lawsuit would have the effect denying these 132 individuals priority in asset distribution.

at 582–83, *quoting,* 10 J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 55.25 (3d ed.1999). The court then cites Wright, Miller and Kane as supporting the view that "when defendants are similarly situated though not jointly liable, final judgment should not be entered against a defaulting defendant . . . ." *Id.* at 583, *quoting,* WRIGHT, ET AL., *supra,* § 2690.

However, upon close examination it appears that these two lines of cases may be reconciled, for a single principle runs through all these cases. As explained by the court in *In re Uranium Antitrust Litigation, supra,* "[t]he result in *Frow* was clearly mandated by the Court's desire to *avoid logically inconsistent adjudications* as to liability." *In re Uranium Antitrust Litigation,* 617 F.2d at 1257 (emphasis added). Professors Wright, Miller and Kane explain that the key "is to recognize that the *Frow* principle is designed to apply only when it is necessary that the relief against the defendants be consistent," WRIGHT ET AL., § 2690, a statement entirely consistent with Professor Moore's conclusion that *Frow* applies not only to cases involving joint liability, but also where the same relief "must be granted against each and every defendant." MOORE ET AL., ¶ 55.25. There are numerous situations where it would be "logically inconsistent" to hold one defendant liable and another not. Allegations of joint liability—the focus of the first line of cases—is but one subset of those situations.[7] But there are other situations which do not technically involve joint liability but which demand consistency in judgments, such as *In re First T.D. & Investment, supra,* where the

identical nature of the claims, facts, and legal issues relative to each defendant made it logically inconsistent to rule in favor of some defendants but not others. In contrast, there are situations such as in *In re Uranium Antitrust Litigation, supra,* where it was theoretically proper to hold some defendants liable, e.g. for conspiracy to commit anti-trust violations, but other defendants innocent. *See, e.g., Farzetta,* 797 F.2d at 155 (finding the differing judgments in asbestos case consistent); *Douglas v. Metro Rental Services, Inc.,* 827 F.2d 252, (7th Cir.1987) (finding that differing judgments against corporation and its agent not inconsistent).

So viewed, these two lines of cases are not at odds but reflect a more general principle. *Frow*'s applicability turns not on labels such as "joint liability" or "joint and several liability," but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform.[8] Where *Frow* applies, it would be an abuse of discretion to enter a default judgment against some but not all defendants prior to adjudication of the claims against answering defendants. *See Gulf Coast Fans,* 740 F.2d at 1511–12; *Martin v. Coughlin,* 895 F.Supp. at 42–43; *Phoenix Renovation,* 197 F.R.D. at 582–83; *Western Security Bank, supra,* 2001 WL 180067 at *2. Under these circumstances, there is, as a matter of law, "just reason for delay" of entry of judgment under Rule 54(b).

On the other hand, where uniformity of liability is not logically required by the facts and theories of the case, the risk of

---

**7.** In *Frow,* the inconsistency flowed not only the fact of allegation of joint liability, but the fact that there was a single *res* in controversy. *See In re Uranium Antitrust Litigation,* 617 F.2d at 1257, n. 40.

**8.** To be sure, a few courts appear to have declined to enter default judgment without

closely considering whether the different judgment would result in inconsistency. *See Federal Deposit Ins. Corp. v. Manatt,* 723 F.Supp. 99, 106 (E.D.Ark.1989); *In re Vantage Petroleum Corp.,* 43 B.R. 257, 259–60 (Bkrtcy.E.D.N.Y.1984).

inconsistent judgments is not sufficiently extreme to bar entry of default judgment as a matter of law. In those situations, the Court concludes that it retains the discretion to balance various factors in deciding whether to enter judgment against less than all defendants permitted under Rule 54(b).

As noted by the lower court in *In re Uranium Antitrust Litigation,* 473 F.Supp. 382, 388–89 (N.D.Ill.1979), Rule 54(b) was amended in 1961 to permit entry of judgment in multiple party litigation in order the deal with the problem of hardship resulting from delay in waiting until completion of the entire case. The purpose of Rule 54(b) which post-dates *Frow* by nearly a century,[9] is to "strike a balance between premature decision-making and the pragmatic needs of the litigants in complex multiple-party actions." *Id.,* at 389. Preserving the Court's discretion in balancing those competing interests comports with other provisions of the Federal Rules which weigh the policy against inconsistent judgments against the pragmatic consideration of the hardship to existing parties in the litigation. *See id.* (discussing similar policy considerations underlying Rule 19 joinder of necessary parties). To hold that the mere possibility of inconsistent judgment divests the Court of its discretion under Rule 54(b) would imply that whenever there are multiple defendants who raise similar defenses, the court could never enter a default judgment until conclusion of the entire case regardless of the substantial prejudice likely to be suffered by the plaintiff as a result of the delay. Such a rule would contravene the purpose of the 1961 amendment to Rule 54(b).

In the instant case, *Frow* does not bar the exercise of discretion to enter a default

judgment against the defaulting defendants. This is not a case of "joint" liability where the theory of the case demands uniformity of judgment among all defendants. Plaintiffs have alleged "joint and several" liability, not strictly "joint" liability against the defendants. More important than the label, however, is the fact that judgment against the other defendants would not necessarily be inconsistent with a judgment in favor of defendant Tsai should he choose to defend. The claims of conversion and breach of contract can stand against the other defendants without necessarily finding defendant Tsai individually liable as well. Defendant Tsai's liability, either derivative of the corporate defendants under an alter ego theory or as a joint participant with defendant Kuei, turns on the facts proven with respect to his own conduct and involvement. For example, while Shanghai Automation may be entitled to judgment on its claim against Cipher (CA) for the conversion of the laptop computers, defendant Tsai may be able to prove that Cipher (CA) was an alter ego of only defendant Kuei due to their differences in conduct, control, and culpability. Differences could obtain with respect to other causes of action as well. For instance, the claim for recovery of loans advanced to defendant Kuei may not be recoverable from defendant Tsai if he proves he had no direct involvement in and did not unlawfully benefit from that transaction. Likewise, it is possible that the bank loans guaranteed by Shanghai Automation where solely or primarily converted by defendant Kuei.

Thus, because differing judgments would not necessarily be illogical, *Frow* does not apply, and the Court retains discretion to enter default judgments against

---

**9.** The Second Circuit has suggested but not held that it is unlikely that *Frow* retains any force subsequent to the adoption of Rule

54(b). *See International Controls,* 535 F.2d at 746–47 n. 4.

less than all defendants under Rule 54(b). This is an appropriate case to exercise such discretion. As noted above, there are strong reasons favoring entry of a default judgment against defendants other than defendant Tsai in the instant case. Nearly all the factors enumerated in *Eitel v. McCool, supra,* and previously discussed, militate in Plaintiff's favor, particularly the danger that any damages awarded is likely to become increasingly uncollectible with the passage of time. *Cf. In re Uranium Antitrust,* 473 F.Supp. at 390 (plaintiff faced the possibility that the "defaulting defendants, which are all foreign corporations, may conceal or transfer their assets which are subject to execution by United States Courts"). Weighed against those considerations is the risk of inconsistent judgments should defendant Tsai actively defend and obtain a favorable judgment inconsistent with the default judgments. However, that risk is slight. As noted above, differing judgments against defendant Tsai and the defaulting defendants would not necessarily be illogical. Moreover, for the reasons previously stated, defendant Tsai is unlikely to defend this suit. The instant case is a far cry from situations in which there was an "extreme risk of inconsistent outcomes," *see Phoenix Renovation,* 197 F.R.D. at 584, or where contradictory outcomes was "more likely" than consistent outcomes. *See Western Security Bank, supra,* 2001 WL 180067, at *2.

In short, the Court finds there is no "just reason for delay" in entering default judgments as to liability against the defaulting defendants. However, a further question is raised with respect to entry of a damages judgment at this juncture. In *In re Uranium Antitrust Litigation, supra,* the court permitted entering a default judgment against some defendants as to liability, but postponed a damages hearing until liability of all defendants were resolved. It did so because there could only

be a single damage amount assessed on the basis of the plaintiff's claim of conspiracy involving joint and several liability. *See In re Uranium Antitrust Litigation,* 617 F.2d at 1262; *see also Hunt v. Inter-Globe Energy, Inc.,* 770 F.2d 145, 148 (10th Cir.1985) (consistent damage awards on the same claim essential among joint and several tortfeasors). In the instant case, however, Plaintiff's claims do not demand a single damage award against all defendants. For the reasons stated above, a full damages award against the defaulting defendants would not necessarily be inconsistent with a possible lesser award against defendant Tsai. Defendant Tsai might be found liable for certain proven conduct and not others, and thus could be held liable on less than all Plaintiff's claims. Hence, the Court finds there is no "just reason for delay" in entering default judgments as to damages against the defaulting defendants.

Accordingly, entry of default judgment is appropriate under Rule 55(b). In order to obtain the entry of a default judgment, however, Plaintiff must prove the amount of damages to which it is entitled. *See Shop Ironworkers Local 79 Pension Trust v. United Safe, Inc.,* No. C99–2745 VRW, 1999 WL 638504, *2 (N.D.Cal. Aug.18, 1999); *see also Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 89 L.Ed. 3 (1944). After reviewing the Complaint and papers submitted in support of Plaintiff's motion, for the reasons stated above, the Court finds that Plaintiff Shanghai Automation has presented sufficient evidence to establish that it is entitled to recover general and compensatory damages against the defaulting defendants, in the following amounts: [1] 75 percent of the 7,000 laptop computers converted, $16,012,500.00; [2] 75 percent of SMEC's monies converted, $2,872,500.00; and [3] loans made to defendants Kuei and Tsai, jointly, $3,377,000.00.

 In determining whether punitive damages are appropriate, the Court " 'cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of [the defendants'] financial condition.' " *In re Felton,* 197 B.R. 881, 891 (N.D.Cal.1996), *quoting, Adams v. Murakami,* 54 Cal.3d 105, 110, 284 Cal.Rptr. 318, 813 P.2d 1348 (1991); *see also Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.* 727 F.2d 1470, 1473 (9th Cir.1984) (stating that the factors to be considered in fixing a punitive damage award are: (1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants). Based on the evidence in the record and the insufficient information presented to the Court regarding, *inter alia,* defendants' wealth from which to base such a award, the Court declines to award punitive damages.

Shanghai Automation fails to submit any evidence or argument in support of attorney's fees and costs and appears to have abandoned its claim in this regard.

### RECOMMENDATION

GOOD CAUSE APPEARING, IT IS HEREBY RECOMMENDED that the motion by plaintiff Shanghai Automation for entry of default judgment (No. 47) be GRANTED and judgment entered against defendants Kuei, Micro Link Systems, Inc., Microlink Data Systems, Inc., Cipher Instrument, Inc. and MIG, Inc. as follows:

| | |
|---|---|
| 75 percent of the 7,000 laptop computers converted | $16,012,500.00 |
| 75 percent of SMEC's monies converted | $ 2,872,500.00 |
| loans made to defendants Kuei and Tsai, jointly | $ 3,377,000.00. |
| *TOTAL* | $22,262,000.00 |

A judgment in favor of plaintiff Shanghai Automation and against defendants Kuei, Micro Link Systems, Inc., Microlink Data Systems, Inc., Cipher Instrument, Inc. and MIG, Inc. should be entered for general and compensatory damages in the amount of $22,262,000.00.

Any party may file objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b) and Local Civil Rule 72–3.

Nov. 2, 2001.